Good morning, your honors. My name is Josh Lee, and I represent the appellant Raymond Goldsberry. The jury's verdict that Mr. Goldsberry knowingly touched his daughter should be reversed. The evidence presented at trial is equal, if not more, circumstantial support to the Reversal for insufficient evidence is required in a situation like that, because where the evidence underlying a conviction gives equal or nearly equal circumstantial support to a theory of innocence, a reasonable jury would necessarily entertain a reasonable doubt. Counsel, how should we apply this principle, this equally consistent principle, while adhering to the quite deferential standard of review that we have on your sufficiency claim? Two points about that. First of all, the point is about circumstantial evidence and not about whether you believe any given testimony. So you can't, under this theory, say, well, if the jury didn't believe witness A and did believe witness B who supported the defense, it's insufficient. Credibility decisions are off the table. The second thing is what's key to this, and this is what this court said in Lover, is the reasonable doubt standard. So if this court says there are multiple equally plausible inferences and we can't tell which one is more likely, it's unreasonable for someone to say beyond a reasonable doubt that it has been proven. And here, a mistake was terrifyingly plausible. Mr. Goldsberry had every reason to believe that he was in bed with his wife. His daughter lay down in his wife's place in the middle of the night. The room was dark. His daughter was roughly the same size as his wife, and the touching was over so fast that Mr. Goldsberry wouldn't have had time to catch his breath. He did stop. Other circumstantial evidence that was never contradicted also suggests Mr. Goldsberry would have assumed he was in bed with his wife. So his wife, Mrs. Goldsberry, usually worked that day shift and slept beside Mr. Goldsberry at night. Counsel, can I interrupt you for, I have one question about a point you made in your reply brief since you're marshaling those various points of evidence. You say that you are not sure I understand the implication of that point. So essentially, I think that there was conflicting evidence on whether he was half asleep. And so therefore, I am not positing that he was less than fully conscious. I'm taking the evidence in the light most favorable to the government. And in the light most favorable to the government, the jury could have said, well, his consciousness was not significantly diminished at the time. But nevertheless, even if his consciousness was not significantly diminished because of all these circumstances that I'm laying out, he would have assumed he was in bed with his wife, or certainly that is equally plausible. What about the evidence of his reaction after the fact, and whether the jury could infer something from how he cried and said he had made a serious mistake and asked his dear friend whether he was asking questions as a friend or a police officer? Yeah, so a consciousness of guilt theory doesn't really work on this case for the government. And the reason is that Mr. Goldsberry's theory of defense acknowledged that he had committed an inherently shameful act. His theory of defense admitted, I touched my daughter's vagina. That's inherently shameful. And the defense's theory, the defense affirmatively elicited evidence and affirmatively argued, he felt guilt and shame about this. So I certainly think if you touch your daughter's vagina by mistake, it is fair to say, oh my gosh, I made a horrible mistake. Then he's got these people who have concluded that he's guilty of this terrible offense. I think an innocent person has every reason not to want to talk to a police officer who has evidently concluded that he is guilty of a serious offense. And again, this is the same problem with all of the government settings. Is it possible that he reacted this way because he knew he was guilty? Is it possible that he reacted this way because he felt shame about committing this mistake? That's possible. There's no way to rationally choose among these competing inferences. And what Judge Gorsuch said in Lubbock is that if there's not a reason to choose between these competing inferences, it's speculation. So how do we apply that principle, let's say, to our review of KG's testimony taken in light of the expert testimony about child abuse disclosures? Okay, the expert testimony is an excellent example of what's wrong with the government's case. And that's because what the expert said is it is possible that kids who have been abused can react by saying these things. It's also possible that kids can say it was an accident, it only happened one time because it was actually an accident and it only happened one time. And the expert was exceptionally clear on cross-examination that these concepts the expert discussed, minimization, that sort of stuff, these are not diagnostic. They are not meant to determine whether sexual abuse occurred. It couldn't have been clearer that the expert said, I have no reason to So again, this is the problem with the whole case. It's conceivably possible that KG was doing this, but there's no reason to think that she was minimizing as opposed to telling the truth, and the expert said that. So another thing that the government said is that KG's behavior after the incident is consistent with that of a child abuse victim. But again, this is the same problem as with the consciousness of guilt evidence. The theory of innocence stipulated that the incident happened, and KG behaving like an incident happened doesn't prove anything. And again, the forensic interviewer's testimony helps here. The forensic interviewer said, quote, an act wouldn't have to be criminal to be traumatizing to a child. So again, KG behaving like something happened is not inconsistent with the theory of innocence. Well, the jury, the one question the jury had during deliberations was, can we rely on our that Mr. Goldensberry was telling? Two responses to that. Number one, we can't use the decision that the jury made to conclude that the evidence was sufficient because the jury's decision is what's under review here. So, you know, sufficiency review presumes that 12-person unanimous juries make unreasonable mistakes. So we have to go in with that being a possibility. My point is, if the defense theory is just simply not believable from a common sense standpoint, is that enough to meet the sufficiency? So if the defense is on its face incredible, then sure, the evidence would be implausible. If it's implausible to the extent beyond a reasonable doubt, then sure, you're going to deem the evidence sufficient. But you shouldn't deem it implausible beyond a reasonable doubt based on all the circumstantial evidence that I mentioned. The other thing about common sense, several of this court's cases show that common sense can often be a heuristic that's used to find guilt-absent evidence. So for example, in the Washington case, which was a Judge Bacharach opinion, the defendant was driving a car and had tons of marijuana in the trunk. And the jury evidently thought, if you're driving a car and there's a bunch of marijuana in the trunk, you probably know it. But no, this court said there was not actual evidence of that. There was another case written by Judge Holmes, I think it was Dobbs, where the defendant had child pornography on his computer. And the jury evidently said, you don't get child pornography on your computer without knowing it. That's common sense. And Judge Holmes says, no, there was no evidence of that. So again, there's a danger on relying on common sense as a cover for the absence of evidence. So what is the government's strongest position then? I think, I don't know what the government's strongest position is, because again, I think all of the evidence suffers from the same problem. I think that their strongest position is the evidence is consistent with guilt. But that's the wrong way to look at it. They say he reacted this way, the jury could have inferred that this was conscious of guilt and he was guilty. But it all has the same problem, that it's equally consistent. Are there cases other than Loverne that apply this principle, that you're relying on the equally, nearly equally, or equal things about that? First of all, that equally consistent bit is clearly a holding in Loverne. And number two, it's just an extrapolation from what this court says all the time. So again, what Judge Gorsuch says is, if you have competing inferences that are equally plausible, picking one is just speculation. And this court says over and over and over that speculation cannot be a basis for a verdict. So it's just an iteration of a principle that this court applies all the time. Before you run out of time, I'd like to focus on the prosecutorial misconduct claims. You're coming at those claims from a plain error review standards, right? So you have to be such that it would, the judge would feel that they had to interrupt in the middle of a closing argument to correct it. That's a tough standard, isn't it? It's no problem in this case, and I'll tell you why. Because the government admits that at least the first argument, the most critical one, was plainly improper. It's definitely incumbent on the judge if a lawyer is misstating the evidence, misstating the testimony. The judge has to step in. The government basically admits that. Well, and so that gets you error and plain, but then you've got to hit the effects substantial rights part of the prong. That's definitely present on the facts of this case too. All of them in their totality, but especially on number one. This was a closed case at a minimum. The remarks about, so if you remember, the prosecution said, I'm telling you KG did not testify that he was snoring and he had his eyes closed at the time of the incident. So these remarks went to the heart of the case, the disputed element at trial of men's rape. But don't we also have to consider the direction of the jury that rely on what you remember about the testimony? So those were not sufficient in this case because, for two reasons, they weren't contemporaneous with the remarks and they weren't directed at those remarks. So these are just boilerplate warnings and in that situation it's not sufficient. Well, typically, I mean, they weren't just the instructions given by the court because the comments, but rely on your own memory. So this doesn't work either because basically what the prosecution said is, well, your memory controls, but I am telling you as a representative of the United States government, this testimony was not given. And again, the prosecutor saying rely on your own memories, but the entire purpose of these remarks was to affect those memories. The entire purpose was the prosecution was saying, I want you to remember what KG said, how I am telling you to remember. So in those circumstances, something more than what happened here was necessary to make this harmless. That's especially true because, again, juries trust prosecutors. There's case law that says that. And the remarks were lengthy and pointed. This was not something that the jurors would miss or forget. And it came in the rebuttal closing, so it was among the last things that the jurors heard. I'll reserve 30 seconds for Lena, along with the United States. As Jasmine, you observed before convicting Mr. Goldsberry, the jury asked how much of our common sense and life experiences can we use to weigh in making our decision? And after that question on the question sheet, they wrote in parts, knowing this was the only question before the jury that's before this court. And what the United States asks is that this court show the deference that is due a jury's verdict and that it take the evidence in the light most favorable to the jury. Here, there was substantial evidence in the record that would have allowed the jury that was in the position to observe the witnesses and to consider all of that circumstantial evidence together in concluding that Mr. Goldsberry knowingly touched his daughter's vagina. And what's your best evidence on the knowingly prong? Our best evidence is Mr. Goldsberry's statements. Both his statements to Brennan Guzman, the CPS investigator, in which he clearly articulated and recalled what had happened that stimulated. He reached past, and this is her quote of his statement to her. He rolled over on his stomach to stimulate. He reached past the shorts and panties and began to stimulate when his fingers went past the labia majora. Mr. Lee makes much of the fact that they are not relying on the fact that Mr. Goldsberry was asleep or half asleep that night. But the jury heard over and over again from Mr. Goldsberry's wife, from KG, from other witnesses that Mr. Goldsberry had a sleep disorder, was half asleep. Mr. Goldsberry was falling asleep during the trial, at least ostensibly. There was a lot of evidence suggested that would have led the jury to believe that that was his defense, whether it's their argument on appeal or not. The fact that he clearly remembered and recounted what had happened to Brennan Guzman years after it occurred undermined the theory that was presented to the jury. And the conflict between the reliance on whether he was half asleep or not and the clearness of his recollection undermined the defense's theory of the case. In addition to those statements that he made to Ms. Guzman, Mr. Goldsberry's most effective statements that the jury heard were those to his lifelong best friend of 26 years, Nathan Bartlett. And he did ask, as Judge McHugh pointed out, whether he was speaking to Brother Nathan or Officer Nathan. But maybe more important than that was his statement before that, that he told Officer Bartlett that he was, quote, also talking to another man of God about this. If this was an accident, if this was a mistake, why did Mr. Goldsberry need to talk to a man of God about it? When he was crying, sobbing, saying he messed up, if this was an accident, maybe those statements make sense. How is that not just precisely equally, equal evidence of shame and remorse in this context? The fact that he was crying and sobbing was equal evidence of shame and remorse. But if it was accidental, what was the need to speak to a man of God? Where was the guilt that resulted, particularly? Well, maybe you feel terrible that you've traumatized your daughter. I mean, I think, you know, you're asking us to perform a pretty difficult function in terms of what his religious beliefs are and when he needs to repent or talk to a man of God. And when we're talking about the evidence, we're putting ourselves in the place of the jury and we're supposed to know only what the jury knew. And the government's brief is just littered with evidence that we should not know. And things that the jury was never told about, very prejudicial to the defendant. And I personally was surprised to see it in there. And I was offended by it because it makes our job so much harder to try to sanitize our minds from the things we shouldn't know. And the reason that material was in the government's brief is that the unjustly persecuted an innocent man based on only the evidence that was before the jury. It was not effective. It was not effective because what we have to do, as Judge McHugh is pointing out, is apply with rigor the standard for evaluating sufficiency. And it's very difficult. This is why I particularly want the answer to the question that Judge McHugh asked you, what is the evidence on knowledge? Because it's very difficult to parse. If I might respond to the first part of that question first. Notably in the appellant's opening brief, that brief spends four pages on the testimony that came out at sentencing. Also not before the jury. And it shouldn't be in there either. And to leave the court with the impression that Mr. Goldisberry is innocent and this was an unjust prosecution, whether the 404 evidence... The issue is whether he should have been found not guilty, not found innocent. Precisely. Based on the evidence presented to the jury. That's the issue that we have to wrestle with. And so from my standpoint, that evidence both about sentencing and about the evidence that 404B never should have made its way into the appellate brief. So both of you, that's my opinion. I appreciate that, Your Honor. In going back, however, to the difficult job before this court, it is to evaluate only the evidence that was presented to the jury. But with deference to the jury's ability to make credibility determinations, to assess in person when KG said this was an accident. Obviously, KG cannot know what was in her father's head, but the jury could assess all of the things that happened to KG after this episode took place and years later when she chose to disclose it for the first time to Megan Yee. So in terms of the evidence that is the government's best evidence of the mens rea element, we've already gone over his clear recollection of what occurred and his statements to Mr. Bartlett. What else do we have? We have the testimony of the CPS investigator, again, Brenna Guzman, who concluded based on her investigation that KG should undergo trauma informed therapy and that Michelle Goldisberry, not notably Raymond Goldisberry, should go into the PEGS, the parent education group that was for parents of sexual abuse victims. So why is that not governed by the Lovern standard here? Why isn't it equally just as plausible that she would need trauma informed therapy after undergoing this accident? The trauma informed therapy, certainly, but the fact that the recommendation was for parents of sexual abuse victims, not for accidental touching victims is part of the point there. I'd like to talk about Lovern a little bit because I think the difficult question, the only difficult legal question for this court is whether Lovern means that when the evidence is in equal poise, a jury cannot convict or a jury's conviction cannot be reasonable. Reading Lovern, I think it's important to realize that that was a case, although it was a knowing standard, it was effectively a specific intent case. The knowledge that was required was very specific and there were two defendants in Lovern, the pharmacist and the IT guy. And the pharmacist was convicted under a knowing standard because what was required to be known was whether the prescription or the providing of these medications was pursuant to an ordinary course of pharmaceutical practice. And the IT guy, his conviction was overturned on sufficiency because there was not a direct knowledge or testimony about his knowledge of that. And now Justice Gorsuch concluded that because there was no evidence that he knew what the standard was, like the 45 years of experience the pharmacist had, that was not sufficient. The question here isn't a specific type of knowledge, like the knowledge that was required in Lovern. The question here is simply, did Mr. Goldisberry know who he was touching that day? And the evidence that he knew that largely goes to the common sense fear that the jury is able to assess, that to their life experiences in common sense. In particular, I want to clarify something from Appellant's that is not true. If you read the record, both from KG's testimony and from Mr. Goldisberry's statements to Brenna Guzman, this was not an instantaneous process. KG had her back to her father. She was facing the wall. He reached over her, and that's in her testimony. He reached over, and that was reaching over her body. His testimony, he rolled over, he reached over, he reached inside her shorts, inside her panties, into, and did not begin to stimulate until his hands were inside her. The testimony that the Appellant relies on to say this was over in an instant is that once his fingers were inside his daughter, and she awoke, and she described, she felt his fingers moving inside her. Again, not over in an instant, but when she awoke, realized what was happening and said, Dad, then it was over in an instant. But from Mr. Goldisberry's perspective, this was not over in an instant. There were ample opportunities for him in the course of what he was doing to realize that he was reaching around his daughter into his daughter's shorts and underwear, and she was 11 years old, not over his 37-year-old wife, who he'd been married to for nearly 20 years. The differences between the body of an 11-year-old, even a tall 11-year-old, even an overweight 11-year-old, and a 37-year-old is the kind of thing that falls within the plausible based on Mr. Goldisberry's account, on KJ's account. What is the precise moment in time that the mens rea applies here? What exactly are we looking at in terms of when knowledge accrued? Is it when she was already in bed? When he acted is when the mens rea applies. When he committed the actus reus, which is to say, when he reached inside his daughter's vagina, before she awoke and said, Dad. I just briefly want to address something that goes both to the prosecutorial misconduct and to the sufficiency issue. Because the appellant explains that it doesn't matter for his argument whether Mr. Goldisberry was half asleep, that the jury could have found Mr. Goldisberry was awake, the fact that he is premising his prosecutorial misconduct argument only now on the erroneous comment by the prosecutor that KJ testified that his eyes weren't closed and didn't testify that he was snoring, that no longer matters. Even if it did in the first instance, if the theory of the case isn't that Mr. Goldisberry was half asleep and did this because he was half asleep, then the fact that the was asleep frankly cannot go to his substantial rights. Even if the many instructions the jury received that their recollection controlled, their memory controlled, and that the statements of lawyers and argument of lawyers are not evidence and that they could rely only on evidence when deciding whether in their common sense and life experience, Mr. Goldisberry knew what he was doing that day. Let me ask you one more question about Loverne. The thesis of Loverne that you advanced, the case itself does not specifically, the holding that Mr. Lee relies on, it does not specifically limit itself in the way that you describe. Is that fair to say? I think that's fair. I think the Third Circuit case on which it relies about the equal poise theory, that is largely in the context of knowledge of drugs. The Third Circuit has since disavowed that as inconsistent with the general principle in all cases that we must defer to a jury's assessment of the facts. I think that's why Loverne, if you read Loverne solely for the general principle, I think my time is up. May I finish my answer? Yes. If you read Loverne for the broad principle that anytime evidence in a cold record supports either theory that the court must reverse, that doesn't show the requisite amount of deference to a jury's verdict and to the fact that the jury was in the best position to evaluate the evidence before it and to come to a conclusion beyond a reasonable doubt. Thank you. Thank you. And we'll take that to one minute to make a move. Thank you. I just have one point to make. The government's counsel has seriously confused the issues when she says that I cannot rely on the theory that he was half asleep for the prosecutorial misconduct. These are two separate claims. Claim one, sufficiency, whether a jury could have rejected beyond a reasonable doubt the theory that he was half asleep. I haven't argued on the sufficiency thing. For the prosecutorial misconduct, substantial rights, the question is whether this jury would have rejected beyond a reasonable doubt the theory that he was half asleep absent the prosecutorial misconduct. And for that claim, I do additionally rely on the theory that he was half asleep because the balance of the evidence showed that, and but for the prosecution's misconduct, a jury might have taken the theory that he was half asleep as supportive of reasonable doubt. Thank you. Thank you. We'll take this matter under advisement.